**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**

Thurgood Marshall U.S. Courthouse    40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

**MOTION INFORMATION STATEMENT**

**Docket Number(s):** 21-1365        Caption [use short title]

**Motion for:** Leave to File Amicus Curiae Brief in

Support of Intervenor Defendants-Appellees

Set forth below precise, complete statement of relief sought:

Leave to file amicus curiae brief in support of      Soule v. Connecticut Association of Schools, Inc.

Intervenor Defendants-Appellees

**MOVING PARTY:** Southern Poverty Law Center      **OPPOSING PARTY:**
☐ Plaintiff    ☐ Defendant
☐ Appellant/Petitioner    ☐ Appellee/Respondent

**MOVING ATTORNEY:** **Joshua B. Picker**      **OPPOSING ATTORNEY:**
[name of attorney, with firm, address, phone number and e-mail]

Covington & Burling LLP

The New York Times Building, 620 Eighth Avenue

New York, NY 10018     (212) 841-1124     jpicker@cov.com

Court-Judge/Agency appealed from: U.S. District Court, District of Connecticut

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
☑ Yes ☐ No (explain):

Opposing counsel's position on motion:
☑ Unopposed ☐ Opposed ☐ Don't Know
Does opposing counsel intend to file a response:
☐ Yes ☑ No ☐ Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUNCTIONS PENDING APPEAL:**
Has request for relief been made below? ☐ Yes ☐ No
Has this relief been previously sought in this Court? ☐ Yes ☐ No
Requested return date and explanation of emergency:

Is oral argument on motion requested? ☐ Yes ☑ No (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set? ☐ Yes ☑ No If yes, enter date:

**Signature of Moving Attorney:** /s/ Joshua B. Picker
**Date:** October 14, 2021      Service by: ☒ CM/ECF ☐ Other [Attach proof of service]

**Form T-1080** (rev. 12-13)

# 21-1365

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

Selina Soule, a minor by Bianca Stanescu, her mother, Chelsea
Mitchell, a minor, by Christina Mitchell, her mother, Alanna Smith, a
minor, by Cheryl Radachowsky, her mother, Ashley Nicoletti, a minor,
by Jennifer Nicoletti, her mother,
*Plaintiffs-Appellants,*

*v.*

Connecticut Association of Schools, Inc, DBA Connecticut
Interscholastic Athletic Conference, Bloomfield Public Schools Board of
Education, Cromwell Public Schools Board of Education, Glastonbury
Public Schools Board of Education, Canton Public Schools Board of
Education, Danbury Public Schools Board of Education,
*Defendants-Appellees,*

*and*

Andraya Yearwood, Thania Edwards on behalf of her daughter T.M.,
and Commission on Human Rights and Opportunities,
*Intervenor Defendants-Appellees.*

On Appeal from the United States District Court for the District of
Connecticut, Case No. 3:20-cv-00f201 (RNC)

## MOTION OF SOUTHERN POVERTY LAW CENTER FOR LEAVE
## TO FILE AMICUS CURIAE BRIEF IN SUPPORT OF
## INTERVENOR DEFENDANTS-APPELLEES

Pursuant to Federal Rule of Appellate Procedure 29(a)(3), the Southern Poverty Law Center (SPLC) respectfully requests leave of this Court to file the accompanying brief as *amicus curiae* in support of Intervenor Defendant-Appellees.

SPLC is a nonprofit civil rights organization dedicated to fighting hate and bigotry, and to seeking justice for the most vulnerable members of society. SPLC has participated as counsel or amicus curiae in a range of cases before the U.S. Supreme Court, federal appellate and district courts, and state courts in its efforts to secure equal treatment and opportunity for marginalized groups in all aspects of society.

In this context, SPLC seeks to provide the Court with relevant information and historical perspective regarding the reliance of parties involved in the judicial system on illegitimate presumptions and prejudice to justify discrimination which should aid the Court in considering the conduct of the District Court judge regarding proper terminology to address litigants.

Respectfully submitted,

/s/ *Joshua B. Picker*_____
Joshua B. Picker
Covington & Burling LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1124
jpicker@cov.com

/s/ *Jennifer Vail*_____
Jennifer Vail
Southern Poverty Law Center
400 Washington Ave.
Montgomery, AL 36104
(201) 469-6455
jennifer.vail@splcenter.org

Ryan O. Mowery
Covington & Burling LLP
One CityCenter
850 Tenth St. NW
Washington, DC 20001-4956
(202) 662-5482
rmowery@cov.com

*Counsel for Amicus Curiae Southern Poverty Law Center*

October 14, 2021

## CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2021, a true and correct copy of the foregoing *Motion of Southern Poverty Law Center for Leave to File Amicus Curiae Brief in Support of Intervenor Defendants-Appellees* was filed electronically with the Clerk of the Court for the United States Court of Appeals for the Second Circuit, and was thereby served upon counsel via operation of the Court's CM/ECF system pursuant to Local Rule 25.1(h).

October 14, 2021

*/s/ Joshua B. Picker*
Joshua B. Picker

# 21-1365

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

Selina Soule, a minor by Bianca Stanescu, her mother, Chelsea
Mitchell, a minor, by Christina Mitchell, her mother, Alanna Smith, a
minor, by Cheryl Radachowsky, her mother, Ashley Nicoletti, a minor,
by Jennifer Nicoletti, her mother,
*Plaintiffs-Appellants,*

*v.*

Connecticut Association of Schools, Inc, DBA Connecticut
Interscholastic Athletic Conference, Bloomfield Public Schools Board of
Education, Cromwell Public Schools Board of Education, Glastonbury
Public Schools Board of Education, Canton Public Schools Board of
Education, Danbury Public Schools Board of Education,
*Defendants-Appellees,*

*and*

Andraya Yearwood, Thania Edwards on behalf of her daughter T.M.,
and Commission on Human Rights and Opportunities,
*Intervenor Defendants-Appellees.*

On Appeal from the United States District Court for the District of
Connecticut, Case No. 3:20-cv-00f201 (RNC)

## PROPOSED BRIEF OF AMICUS CURIAE SOUTHERN
## POVERTY LAW CENTER IN SUPPORT OF INTERVENOR
## DEFENDANTS-APPELLEES

Jennifer Vail
Southern Poverty Law Center
400 Washington Ave.
Montgomery, AL 36104
(201) 469-6455
jennifer.vail@splcenter.org

Joshua B. Picker
Covington & Burling LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1124
jpicker@cov.com

Ryan O. Mowery
Covington & Burling LLP
One CityCenter
850 Tenth St. NW
Washington, DC 20001-4956
(202) 662-5482
rmowery@cov.com

*Counsel for Proposed Amicus Curiae Southern Poverty Law Center*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES.....................................................................ii

INTERESTS OF PROPOSED *AMICUS CURIAE* ..................................vi

ARGUMENT ...........................................................................................1

I.    Appellants' insistence on referring to Intervenor-Appellees inconsistently with their gender identities undermines equal access to justice for transgender people, mirroring earlier jurisprudence involving harm to other historically disadvantaged groups. .....................................................................2

II.   The district court's insistence on the use of respectful terminology is consistent with judicial precedent demanding civility and respecting dignity. ........................................................6

III.  Judicial insistence that litigants use language that ensures equal access to justice does not burden any party's advocacy. .....13

CONCLUSION ......................................................................................17

CERTIFICATE OF SERVICE.................................................................18

CERTIFICATE OF COMPLIANCE.........................................................19

i

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Battista v. Dennehy,*
2008 WL 11340291 (D. Mass. Dec. 9, 2008) ...................................... 10

*Bradwell v. State,*
83 U.S. 130 (1873) .................................................................................. 3

*Buck v. Bell,*
274 U.S. 200 (1927) ............................................................................... 4

*Canada v. Hall,*
2019 WL 1294660 (N.D. Ill. Mar. 21, 2019) ........................................ 9

*Derisme v. Hunt Leibert Jacobson P.C.,*
880 F. Supp. 2d 339 (D. Conn. 2012) .............................................. 5, 7

*Doe v. City of New York,*
976 N.Y.S.2d 360 (Sup. Ct. 2013) ..................................................... 12

*Dred Scott v. Sandford,*
60 U.S. 393 (1857) .................................................................................. 3

*El-Hakem v. BJY Inc.,*
415 F.3d 1068 (9th Cir. 2005) ............................................................ 15

*Equal Emp. Opportunity Comm'n v. R.G. &. G.R. Harris
Funeral Homes, Inc.,* 884 F.3d 560 (6th Cir. 2018) ............................ 9

*Etsitty v. Utah Transit Auth.,*
502 F.3d 1215 (10th Cir. 2007) .......................................................... 15

*Franklin v. World Pub. Co.,*
83 P.2d 401 (Okla. 1938) ....................................................................... 3

*Hamilton v. Alabama,*
376 U.S. 650 (1964) ................................................................................ 5

*Hampton v. Baldwin*,
  2018 WL 5830730 (S.D. Ill. Nov. 7, 2018) ......................................... 12

*Imani v. City of Baton Rouge*,
  No. 3:17-cv-000439 (M.D. La. Sept. 7, 2018) ....................................... 9

*Johnston v. Univ. of Pittsburgh of Commw. Sys. of Higher
  Educ.*, 97 F. Supp. 3d 657 (W.D. Pa. 2015) ...................................... 15

*Lee v. ITT Standard*,
  268 F. Supp. 2d 315 (W.D.N.Y. 2002)................................................. 6

*Littleton v. Prange*,
  9 S.W.3d 223 (Tex. App. 1999)........................................................... 11

*Lynch v. Lewis*,
  2014 WL 1813725 (M.D. Ga. May 7, 2014) .................................. 11, 14

*Matter of M.E.B.*,
  126 N.E.3d 932 (Ind. Ct. App. 2019) ............................................... 15

*In re Marriage of Whalen*,
  2019 WL 1487637 (Iowa Ct. App. Apr. 3, 2019)................................. 7

*Middleton v. State*,
  64 N.E.3d 895 (Ind. Ct. App. 2016) ................................................... 5

*Nichols v. State*,
  620 S.W.2d 942 (Ark. 1981) ............................................................... 7

*Phillips v. Michigan Dep't of Corr.*,
  731 F. Supp. 792 (W.D. Mich. 1990)................................................. 11

*Prescott v. Rady Children's Hosp. San Diego*,
  265 F. Supp. 3d 1090 (S.D. Cal. 2017)............................................... 12

*Principe v. Assay Partners*,
  586 N.Y.S.2d 182 (Sup. Ct. 1992) ....................................................... 6

*Smith v. Rasmussen*,
  57 F. Supp. 2d 736 (N.D. Iowa 1999).................................................. 10

iii

*In re Snyder*,
472 U.S. 634 (1985) ........................................................................ 8

*State of Ohio v. Cantrill*,
2020 WL 1528013 (Ohio Ct. App. 6th Dist. Mar. 31, 2020) .............. 14

*State v. Jackson*,
879 P.2d 307 (Wash. App. 1994) ...................................................... 6

*Tardif v. City of New York*,
344 F. Supp. 3d 579 (S.D.N.Y. 2018) ............................................... 9

*Trust Co. Bank of Northwest Georgia, N.A. v. Manning*,
1993 WL 294184 (N.D. Ga. May 21, 1993) ........................................ 7

*Turner v. Arkansas*,
784 F. Supp. 553 (E.D. Ark. 1991) .................................................. 14

*United States v. Beasley*,
72 F.3d 1518 (11th Cir. 1996) ........................................................... 7

*United States v. Michigan*,
471 F. Supp. 192 (W.D. Mich. 1979) ................................................ 3

*United States v. Sugden*,
226 F.2d 281 (9th Cir. 1955) ............................................................ 3

*United States v. Tyndale*,
2019 WL 440572 (E.D. Ky. Feb. 4, 2019) ....................................... 14

*United States v. Varner*,
948 F.3d 250 (5th Cir. 2020) ........................................................... 14

**Other Authorities**

Ryan K. Blake, *Transgender Rights Are Human Rights: A
Contemplation of Litigation Strategies in Transgender
Discrimination Cases*, 33 Wis. J.L. Gender & Soc'y 107
(2018) ............................................................................................... 4

Chan Tov McNamarah, *Misgendering As Misconduct*,
68 UCLA L. Rev. Discourse 40 (2020) ............................................ 12

Resolution, Am. Bar. Assn. (Feb. 22, 2021), *available at*
https://www.americanbar.org/content/dam/aba/directories/
policy/midyear-2021/106a-midyear-2021.pdf ................................... 11

Stephen T. Russell et al., *Chosen Name Use Is Linked to
Reduced Depressive Symptoms, Suicidal Ideation, and
Suicidal Behavior Among Transgender Youth*, 63 J.
Adolescent Health 503 (2018) ........................................................... 13

## INTERESTS OF PROPOSED *AMICUS CURIAE*

*Amicus* is the Southern Poverty Law Center ("SPLC"), a nonprofit civil rights organization dedicated to fighting hate and bigotry, and to seeking justice for the most vulnerable members of society. SPLC has participated as counsel or amicus curiae in a range of cases before the U.S. Supreme Court, federal appellate and district courts, and state courts in its efforts to secure equal treatment and opportunity for marginalized groups in all aspects of society. In this context, SPLC offers relevant information and historical perspective regarding the reliance of parties involved in the judicial system on illegitimate presumptions and prejudice to justify discrimination.

# ARGUMENT

*Amicus* offers no position on the merits of the underlying appeal in this brief. Rather, SPLC submits this brief to highlight the importance for Appellants to comply with the district court's instruction to refrain from referring to Intervenor-Appellees using the term "males"—language that is directly at odds with their gender identities.[1]

As explained below, the obligations of courtesy, civility, and dignity to which all parties in judicial proceedings must adhere are particularly important to maintain in the case of members of marginalized groups, whom courts and litigants have too often treated with a lack of respect. Today, courts better understand that the use of appropriate language to refer to members of marginalized groups is critical to ensuring equal access to justice.

Here, referring to Intervenor-Appellees using language that is consistent with their gender identities (or at a minimum, using gender-neutral language) is a matter of respect, and is consistent with the

---

[1] No party or counsel for any party authored this brief in whole or in part or otherwise contributed monetarily towards its preparation or submission. No person other than the amicus and its counsel contributed monetarily towards the preparation or submission of this brief. All parties have consented to the filing of this brief.

1

courts' modern understanding of what it means to ensure that members of marginalized groups, including transgender individuals like Intervenor-Appellees, have equal access to justice. SPLC urges this Court to reject Appellants' efforts to avoid referring to Intervenor-Appellees in a respectful manner through a disqualification motion or otherwise.

**I. Appellants' insistence on referring to Intervenor-Appellees inconsistently with their gender identities undermines equal access to justice for transgender people, mirroring earlier jurisprudence involving harm to other historically disadvantaged groups.**

History demonstrates that the use of disrespectful terminology by courts and litigants to refer to members of marginalized groups can impede access to justice. While this case involves one specific marginalized group (transgender individuals), judicial proceedings evidencing a lack of respect for litigants' identities are not confined to this context. Even a cursory examination of past cases involving people of color, women, religious minorities, and individuals with intellectual disabilities offers numerous examples of disrespectful language that revealed bias, compromised the impartiality of the judicial process, and manifested hostility toward those litigants.

The historical roots of judicial bias, both implicit and explicit, are perhaps most evident where people of color have sought justice, only to be met with disrespectful and demeaning language. Far from respecting the personhood of litigants belonging to historically marginalized racial groups, past courts repeatedly referred to these individuals using slurs and outdated terminology. Perhaps the most notorious example is *Dred Scott v. Sandford*, 60 U.S. 393, 407 (1857), in which the U.S. Supreme Court described Black people as "beings of an inferior order." Federal and state courts have used similarly problematic language to refer to litigants of other races and ethnicities. *See, e.g.*, *United States v. Sugden*, 226 F.2d 281, 283 (9th Cir. 1955) (referring to Mexicans as "wetbacks"); *United States v. Michigan*, 471 F. Supp. 192, 207 (W.D. Mich. 1979) (referring to indigenous peoples as "Red Indians"); *Franklin v. World Pub. Co.*, 83 P.2d 401, 403 (Okla. 1938) (referring to Chinese people as "Chink[s]").

Courts have subjected women to similarly demeaning treatment based on prejudicial predispositions, holding, for example, that women lack the worth and abilities of men based on such justifications as "nature's law." *See, e.g.*, *Bradwell v. State*, 83 U.S. 130, 141 (1873)

(Bradley, J., concurring) (referencing "the natural and proper timidity and delicacy" of women). Similarly, the rhetoric chosen by courts has reflected preconceived biases and disdain for persons with disabilities. *See, e.g.*, *Buck v. Bell*, 274 U.S. 200, 207 (1927) ("Three generations of imbeciles is enough").

Transgender persons have not avoided such degrading treatment. Commentators have noted that transgender persons have a "history of being treated with disrespect by the court system," including being "forced to undergo humiliating anatomical dissection," "compar[ed] []to what is considered by the court to be the 'norm,'" and being "described as mentally ill, and somehow incomplete." Ryan K. Blake, *Transgender Rights Are Human Rights: A Contemplation of Litigation Strategies in Transgender Discrimination Cases*, 33 Wis. J. L. Gender & Soc'y 107, 115 (2018).

The use of demeaning and dismissive terminology is not merely disrespectful—it reflects prejudice, reinforcing that members of marginalized groups have unequal status and calling into question whether these litigants can obtain equal access to justice. Given this history, modern courts have increasingly recognized that the respectful

4

treatment of litigants—including the use of terminology that litigants use to refer to themselves—is essential to ensuring an unbiased and impartial justice system. *See, e.g.*, *Hamilton v. Alabama*, 376 U.S. 650 (1964), reversing *Ex parte Hamilton*, 156 So. 2d 926 (Ala. 1963) (reversing a contempt citation where a Black woman refused to respond to a state court judge who addressed her as "Mary," despite her request to be addressed as "Miss Hamilton"); *Derisme v. Hunt Leibert Jacobson P.C.*, 880 F. Supp. 2d 339, 345 n.1 (D. Conn. 2012) ("At the Plaintiff's request, the Court refers to her as Fabiola Is Ra El Bey in recognition of her faith and religion.").

Courts have reinforced the principle that respectful and civil treatment of litigants by all persons involved—including other litigants, jurors, and counsel (including when counsel are referring to their own clients)—is critical to an impartial judicial process. For example, in *Middleton v. State*, the court found that counsel's use of the term "Negro" to refer to his client in front of potential jurors impeded the litigant's right "to the fair administration of justice." 64 N.E.3d 895, 902 (Ind. Ct. App. 2016) (Pyle, J., concurring), *aff'd*, 72 N.E.3d 891 (Ind. 2017). In another case, the court found that a juror's reference to Black

5

people as "coloreds" created an inference of racial bias, undermining the requirement of a fair and impartial jury.  *See State v. Jackson*, 879 P.2d 307, 311 (Wash. App. 1994).

Courts have directed counsel to refer to litigants (and their fellow attorneys) using respectful language, even where it is not counsel's preferred terminology.  *See, e.g.*, *Lee v. ITT Standard*, 268 F. Supp. 2d 315, 355 (W.D.N.Y. 2002) (admonishing plaintiffs not to describe an employee as the "token African–American human resources manager," because while the term "token" was not vulgar, it was "a gratuitous slur of a racial character upon [the employee's] qualifications and reputation"); *Principe v. Assay Partners*, 586 N.Y.S.2d 182, 184 (Sup. Ct. 1992) (sanctioning counsel for referring to female opposing counsel as "little girl" and "little lady," and noting that counsel's language was intended to "condescend, disparage, and degrade a colleague upon the basis that she is female").

## II.    The district court's insistence on the use of respectful terminology is consistent with judicial precedent demanding civility and respecting dignity.

Properly departing from the unfortunate history of judicially sanctioned bias against marginalized groups, many courts now

6

routinely respect litigants' requests to be addressed by a particular name or nomenclature to maintain civility and dignity, and to avoid the appearance of bias. For example, courts have respected requests to refer to litigants by alternate names or nicknames, *see Nichols v. State*, 620 S.W.2d 942, 942–43 (Ark. 1981) (granting request to refer to defendant Penelope Nichols as "Sister Penny"); *In re Marriage of Whalen*, 2019 WL 1487637, at *1 n.1 (Iowa Ct. App. Apr. 3, 2019) (acquiescing in litigant's preference to be called "D.J." instead of "Douglas"), maiden names, *see Trust Co. Bank of Northwest Georgia, N.A. v. Manning*, 1993 WL 294184, at *2 n.1 (N.D. Ga. May 21, 1993) (agreeing to "abide by [defendant's] apparent intention" to be referred to by her maiden name), and preferred names based on litigants' religious, political, or other personal beliefs, *see United States v. Beasley*, 72 F.3d 1518, 1521 (11th Cir. 1996) (referring to defendant as "Yahweh" where defendant rejected his birth name of "Hulon Mitchell, Jr." as a slave name); *Derisme*, 880 F. Supp. 2d at 345 n.1. Implicit in these cases is an understanding that respecting a litigant's self-identity is a matter of

7

basic courtesy and is a part of the court's obligation to eliminate the appearance of bias and ensure equal access to justice.

The principles of civility and dignity are not limited to the language used by the court itself. Federal courts have held that "[a]ll persons involved in the judicial process—judges, litigants, witnesses, and court officers—owe a duty of courtesy to all other participants." *In re Snyder*, 472 U.S. 634, 647 (1985). Courts have a role in ensuring that opposing parties and other litigants adhere to judicial norms of civility and dignity. *See* Code of Conduct for U.S. Judges, Canon 3(A)(3) (2019) (explaining that judges should "be patient, dignified, respectful, and courteous to litigants," and also "require similar conduct by those subject to the judge's control, including lawyers to the extent consistent with their role in the adversary process").

Consistent with this principle, courts have urged litigants to respect other litigants' self-identified nomenclature and naming preferences. For example, in a case involving a transgender high school student, the Clerk of the U.S. Supreme Court issued a letter instructing counsel for an *amicus curiae* not to misgender the minor litigant in the case caption. *Gloucester Cty. Sch. Bd v. G.G.*, *by his Next Friend and*

*Mother*, *Deirdre Grimm*, Case No. 16-273, Letters of Feb. 24, 2017 to

Matthew D. Staver & John C. Eastman.  Other federal courts have

similarly held that "as a general matter, the parties are required to use

witness's [sic] preferred pronouns and names."  *Tardif v. City of New

York*, 344 F. Supp. 3d 579, 606–07 (S.D.N.Y. 2018); *see also Canada v.

Hall*, 2019 WL 1294660, at *1 n.1 (N.D. Ill. Mar. 21, 2019) (noting "the

defendants' careless disrespect for the plaintiff's transgender identity,"

and "caution[ing] counsel against maintaining a similar tone in future

filings"); *Imani v. City of Baton Rouge*, No. 3:17-cv-000439, Dkt. No. 133

(M.D. La. Sept. 7, 2018) (denying defendants' motion to strike portions

of plaintiffs' complaint identifying plaintiffs' preferred pronouns,

notwithstanding defendants' argument that the case "has no sexual

component whatsoever").

The courtesy afforded litigants in their requests to be referred to

by the names and nomenclature with which they identify is no different

for transgender individuals than for any other historically marginalized

groups.  *See Equal Emp. Opportunity Comm'n v. R.G. &. G.R. Harris

Funeral Homes, Inc.*, 884 F.3d 560, 567 (6th Cir. 2018), *aff'd sub nom.

Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731 (2020) ("We refer to

Stephens using female pronouns, in accordance with the preference she has expressed through her briefing to this court."); *Battista v. Dennehy*, 2008 WL 11340291, at *1 (D. Mass. Dec. 9, 2008) ("I have made efforts in these proceedings to honor Battista's request to refer to her using the female pronoun, and have instructed counsel to do the same for purposes of this litigation."); *Smith v. Rasmussen*, 57 F. Supp. 2d 736, 740 n.2 (N.D. Iowa 1999), *aff'd* in part, *rev'd* in part on other grounds, 249 F.3d 755 n.2 (8th Cir. 2001) (noting that "the masculine pronoun will be used in reference to the plaintiff throughout this opinion" and requesting "such courtesy from all counsel and witnesses, whatever the legal merits on any issue may be").

Courts have demanded respect for litigants' preferred nomenclature, even where some aspect of the relevant party's identity is at issue in the case. Indeed, courts have made clear that the use of a party's preferred self-identification "is not to be taken as a factual or legal finding," and is instead "a matter of courtesy," because "it is the Court's practice to refer to litigants in the manner they prefer to be

10

addressed when possible."[2]  *See Lynch v. Lewis*, 2014 WL 1813725, at \*2

n.2 (M.D. Ga. May 7, 2014); *see also Phillips v. Michigan Dep't of Corr.*,

731 F. Supp. 792, 793 n.2 (W.D. Mich. 1990) (using the plaintiff's

requested pronouns notwithstanding that "whether plaintiff is indeed a

transsexual" was a contested issue in the case); *Littleton v. Prange*, 9

S.W.3d 223, 224 (Tex. App. 1999) (using a litigant's preferred pronoun

"out of respect for the litigant," and clarifying that "[i]t has no legal

implications").

In the case of failure to respect a transgender person's identity

(commonly known as "misgendering"), the consequences of refusing to

abide by these basic norms can be particularly harmful.  Courts and

commentators have recognized that the intentional use of incorrect

pronouns to refer to transgender individuals has historically been used

as a tool of humiliation, degradation, and intimidation, threatening to

---

[2] Acknowledging this principle, the American Bar Association adopted a resolution in February 2021 "encourag[ing] use within the legal profession and justice system of pronouns consistent with a person's gender identity, including in filed pleadings, during mediations and court proceedings, and within judicial opinions."  *See* Resolution, Am. Bar. Assn. (Feb. 22, 2021), at 1 & 4, *available at* https://www.americanbar.org/content/dam/aba/directories/policy/midyear-2021/106a-midyear-2021.pdf (noting that the purpose of the resolution is to make the justice system "less exclusionary toward[] individuals of all gender identities" and to "avoid harmful and discriminatory conduct that exhibits bias, prejudice, and harassment").

create a chilling effect on the ability of transgender people to seek judicial redress. *See, e.g.*, *Hampton v. Baldwin*, 2018 WL 5830730, at *2 (S.D. Ill. Nov. 7, 2018) (referencing expert testimony that "misgendering transgender people can be degrading, humiliating, invalidating, and mentally devastating"); *Doe v. City of New York*, 976 N.Y.S.2d 360, 364 (Sup. Ct. 2013) ("[T]he purposeful use of masculine pronouns in addressing plaintiff, who presented as female, and the insistence that she sign a document with her birth name despite the court-issued name change order, is not a light matter, but one which is laden with discriminatory intent."); *see also* Chan Tov McNamarah, *Misgendering As Misconduct*, 68 UCLA L. Rev. Discourse 40, 62 (2020) (collecting cases and secondary sources and concluding that "intentional and repeated misgendering is used to intimidate and harass," and thus "[m]isgendering must be seen as a method deployed simply to badger litigants, with no underlying intent to advance a client's position").

Misgendering of transgender youth has the potential to be particularly damaging, including leading to higher incidences of depression and risk of suicide, among other mental health concerns. *See Prescott v. Rady Children's Hosp. San Diego*, 265 F. Supp. 3d 1090,

1096 (S.D. Cal. 2017) (noting in a case involving the suicide of a transgender adolescent that "[f]or a transgender person with gender dysphoria, being referred to by the wrong gender pronoun is often incredibly distressing"); Stephen T. Russell et al., *Chosen Name Use Is Linked to Reduced Depressive Symptoms, Suicidal Ideation, and Suicidal Behavior Among Transgender Youth*, 63 J. Adolescent Health 503, 503–04 (2018) (finding that the ability to use preferred names and pronouns is associated with fewer depressive symptoms and a lower risk of suicide in transgender youth).

This case presents precisely that risk since Intervenor-Appellees are young transgender women. Appellants' intentional and repeated use of incorrect terminology to refer to high school-aged transgender litigants in the district court proceedings defies the required respect and civility imposed on all persons involved in court proceedings.

## III. Judicial insistence that litigants use language that ensures equal access to justice does not burden any party's advocacy.

Contrary to Appellants' contention below that requiring them to respect Intervenor-Appellees would be "[in]consistent with vigorous representation," Dkt. No. 103-2, Pl.'s Mot. to Disqualify, Ex. A, at 7

13

(May 8, 2020), the court's directive merely protects a historically marginalized group from judicially sanctioned malignment.  In contexts involving transgender litigants and members of other historically marginalized groups, courts have made clear that the use of a litigant's preferred terminology is simply a matter of "following [the litigant's] lead," not a substantive determination, *United States v. Tyndale*, 2019 WL 440572, at *1 n.1 (E.D. Ky. Feb. 4, 2019) (involving a party's preferred way of referring to his race), and "letting the [litigant] establish the appropriate protocol," *Turner v. Arkansas*, 784 F. Supp. 553, 555 n.1 (E.D. Ark. 1991) (same).  Far from suggesting bias or favoritism, acknowledging and complying with a litigant's terminology requests is a matter of basic courtesy and respect.  *See Lynch*, 2014 WL 1813725, at 2 n.2; *State of Ohio v. Cantrill*, 2020 WL 1528013, at ¶ 30 (Ohio Ct. App. 6th Dist. Mar. 31, 2020) (citing dissent in *United States v. Varner*, 948 F.3d 250 (5th Cir. 2020) and stating that "using an individual's preferred pronouns demonstrates respect for that person's dignity, regardless of what the law may require or prohibit").

That extending this common courtesy does not reflect bias in favor of a litigant is further evident in the multiple cases in which courts

14

have accommodated transgender litigants' requests to be identified by their preferred pronouns, but have nonetheless ruled against them on the merits. *See, e.g.*, *Etsitty v. Utah Transit Auth.*, 502 F.3d 1215, 1227–28 (10th Cir. 2007) (acknowledging plaintiff's identity as a transgender woman, but holding on the merits that Title VII did not entitle her to use the women's restroom); *Johnston v. Univ. of Pittsburgh of Commw. Sys. of Higher Educ.*, 97 F. Supp. 3d 657, 668 (W.D. Pa. 2015) (similar). On the other hand, a refusal to ensure that a litigant is provided the dignity of self-identification is likely to suggest bias *against* that litigant, and to call into question whether the litigant received a fair hearing. *See, e.g.*, *Matter of M.E.B.*, 126 N.E.3d 932, 934 n.1 (Ind. Ct. App. 2019) (suggesting that the trial court's failure to use a litigant's preferred pronoun indicated a lack of respect, objectivity, and impartiality); *see also El-Hakem v. BJY Inc.*, 415 F.3d 1068 (9th Cir. 2005) (finding violation of Title VII where employer referred to an Arabic employee as "Manny" despite the employee's requests to be called "Mamdouh").

Here, the district court simply asked Appellants and their counsel to acknowledge the uncontested fact that Intervenor-Appellees are

transgender, and to refrain from referring to them as "males."[3] Appellants may extend basic courtesy to their fellow litigants by using the litigants' preferred pronouns (or simply opting for gender neutral references), and still zealously pursue their argument regarding transgender women's participation in women's sports.

Moreover, if Appellants refuse to refer to Intervenor-Appellees as anything other than "males" (and eschew references to "transgender females"), this may create unnecessary confusion, given that the issue in this case is not whether *men* are permitted to compete in women's sports, but whether *transgender women* may compete with cisgender women. Complying with the district court's instruction appropriately frames the primary issue in this proceeding, and in no way hinders Appellants' ability to litigate any aspect of their case.

---

[3] Indeed, while the district court asked that Appellants refer to Intervenor-Appellees as "transgender females," it stated that it was not requiring use of that specific term, was "not asking [them] to refer to these individuals as 'females,'" and was not barring Appellants from referring to Intervenor-Appellees using other terms like "biologically male," "male bodies," or "transgender athletes." *See* Dkt. No. 103-2, Pl.'s Mot. to Disqualify, Ex. A, at 9 (May 8, 2020) (*citing* Tr. Of Tel. Conf. 29:2-31:10).

## CONCLUSION

For the reasons stated herein, *amicus* believes it is essential to the principle of equal access to justice that Appellants comply with the district court's directive to address Intervenor-Appellees using terminology consistent with their gender identities and asks that this Court follow the district court's example by instructing Appellants accordingly.

Respectfully submitted,

/s/ *Jennifer Vail*
Jennifer Vail
Southern Poverty Law Center
400 Washington Ave.
Montgomery, AL 36104
(201) 469-6455
jennifer.vail@splcenter.org

/s/ *Joshua B. Picker*
Joshua B. Picker
Covington & Burling LLP
The New York Times Building
620 Eighth Avenue
New York, NY 10018-1405
(212) 841-1124
jpicker@cov.com

Ryan O. Mowery
Covington & Burling LLP
One CityCenter
850 Tenth St. NW
Washington, DC 20001-4956
(202) 662-5482
rmowery@cov.com

*Counsel for Proposed Amicus Curiae Southern Poverty Law Center*

October 14, 2021

**CERTIFICATE OF SERVICE**

I hereby certify that on October 14, 2021, this brief was filed electronically with the Clerk of the Court for the United States Court of Appeals for the Second Circuit, and thereby served upon counsel via operation of the Court's CM/ECF system pursuant to Local Rule 25.1(h).


*/s/ Joshua B. Picker*
Joshua B. Picker

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limitation of Fed R. App. P. 29(a)(5), 2d Cir. R. 29.1(c), and 2d Cir. R. 32.1(a)(4) because, excluding the parts of the document exempted by Rule 32(f), it contains 3,454 words.

This brief also complies with the formatting and typeface requirements of Fed. R. App. P. 32(a) and 2d Cir. R. 32(a)(5) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

*/s/ Joshua B. Picker*
Joshua B. Picker

Dated: October 14, 2021