# 21-1365

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

SELINA SOULE, a minor, by Bianca Stanescu, her mother;
CHELSEA MITCHELL, a minor, by Christina Mitchell, her mother;
ALANNA SMITH, a minor, by Cheryl Radachowsky, her mother;
ASHLEY NICOLETTI, a minor, by Jennifer Nicoletti, her mother,

*Plaintiffs-Appellants*,

v.

CONNECTICUT ASSOCIATION OF SCHOOLS, INC. d/b/a
CONNECTICUT INTERSCHOLASTIC ATHLETIC CONFERENCE;
BLOOMFIELD PUBLIC SCHOOLS BOARD OF EDUCATION;
CROMWELL PUBLIC SCHOOLS BOARD OF EDUCATION;
GLASTONBURY PUBLIC SCHOOLS BOARD OF EDUCATION;
CANTON PUBLIC SCHOOLS BOARD OF EDUCATION; DANBURY
PUBLIC SCHOOLS BOARD OF EDUCATION,

*Defendants-Appellees,*

and

ANDRAYA YEARWOOD; THANIA EDWARDS on behalf of her
daughter, T.M.; CONNECTICUT COMMISSION ON HUMAN
RIGHTS,

*Intervenors-Appellees.*

On Appeal from the United States District Court for the District of
Connecticut, Case No. 3:20-cv-00201 (RNC)

**REPLY EN BANC BRIEF OF APPELLANTS**

ROGER G. BROOKS
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
rbrooks@ADFlegal.org

CODY S. BARNETT
ALLIANCE DEFENDING FREEDOM
44180 Riverside Parkway
Lansdowne, VA 20176
(571) 707-4655
cbarnett@ADFlegal.org

JOHN J. BURSCH
CHRISTIANA M. KIEFER
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Ste. 600
Washington, DC 20001
(202) 393-8690
jbursch@ADFlegal.org
ckiefer@ADFlegal.org

RORY T. GRAY
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Rd. NE
Suite D-1100
Lawrenceville, GA 30043
(770) 339-0774
rgray@ADFlegal.org

*Counsel for Appellants*

# TABLE OF CONTENTS

Table of Authorities..................................................................... iii

Introduction .................................................................................1

I.  Defendants get basic elements of the standing inquiry at the
    pleadings stage wrong..............................................................1

    A.  The standing bar is low............................................................1

    B.  Standing is determined when the complaint is filed;
        mootness is different. ............................................................3

    C.  To show standing, plaintiffs need plausible allegations,
        not detailed pleadings or proof. .............................................4

    D.  A single plaintiff with standing is enough. ............................6

II. Plaintiffs plausibly alleged an injury in fact. ...................................6

    A.  Intervenors admit that Plaintiffs plausibly alleged an
        injury in fact. Defendants' arguments to the contrary
        are meritless.............................................................................6

    B.  The CIAC policy's impact on Plaintiffs' competitiveness
        in the marketplace is simply one reason this case isn't
        moot. ......................................................................................10

    C.  Other Courts of Appeals' rulings in student record
        cases confirm Plaintiffs' harm is ongoing, not moot............14

III. Plaintiffs' have plausibly alleged their injuries are
    redressable. ...............................................................................18

    A.  Nominal damages will likely redress Plaintiffs'
        completed harms. .................................................................18

B.     Declaratory and injunctive relief will likely redress Plaintiffs' ongoing harms. ................................................... 19

IV.   *Pennhurst*'s notice requirement doesn't apply. Regardless, Defendants had sufficient notice. ................................................... 22

V.   The merits of Plaintiffs' Title IX allegations aren't before the Court. Nevertheless, Plaintiffs have answers to Intervenors' improper merits claims. ................................................... 25

Conclusion ........................................................................................... 27

Certificate of Service ........................................................................ 29

Certificate of Compliance ................................................................ 30

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Arlington Central School District Board of Education v. Murphy*,
    548 U.S. 291 (2006) ........................................................................24

*Barnes v. Gorman*,
    536 U.S. 181 (2002) ........................................................................24

*Calderon v. Moore*,
    518 U.S. 149 (1996) ..........................................................................3

*Campbell-Ewald Co. v. Gomez*,
    577 U.S. 153 (2016) ........................................................................10

*Chafin v. Chafin*,
    568 U.S. 165 (2013) ..........................................................................3

*Church of Scientology of California v. United States*,
    506 U.S. 9 (1992) ............................................................................11

*City of Los Angeles v. Lyons*,
    461 U.S. 95 (1983) ..........................................................................12

*Clapper v. Amnesty International USA*,
    568 U.S. 398 (2013) ........................................................................12

*Crane v. Indiana High School Athletic Association*,
    975 F.2d 1315 (7th Cir. 1992) ...................................................15–16

*Cummings v. Premier Rehab Keller*,
    142 S. Ct. 1562 (2022) ...............................................................8, 24

*Davis v. FEC*,
    554 U.S. 724 (2008) ..........................................................................3

*Davis v. Monroe County Board of Education*,
    526 U.S. 629 (1999) ........................................................................23

*Davis v. New York*,
    316 F.3d 93 (2d Cir. 2002)................................................................7

*Department of Commerce v. New York*,
    139 S. Ct. 2551 (2019) ................................................................... 13

*FEC v. Akins*,
    524 U.S. 11 (1998) ........................................................................... 7

*FEC v. Cruz*,
    142 S. Ct. 1638 (2022) ................................................................... 12

*Franklin v. Gwinnett County Public Schools*,
    503 U.S. 60 (1992) ......................................................................... 23

*Friends of the Earth, Inc. v. Laidlaw Environmental Services
    (TOC), Inc.*,
    528 U.S. 167 (2000) ................................................................. 3, 15

*Frontiero v. Richardson*,
    411 U.S. 677 (1973) ....................................................................... 26

*Jackson v. Birmingham Board of Education*,
    544 U.S. 167 (2005) ................................................................. 23–24

*John v. Whole Foods Market Group, Inc.*,
    858 F.3d 732 (2d Cir. 2017) ............................................................. 4

*LaFleur v. Whitman*,
    300 F.3d 256 (2d Cir. 2002) ...................................................... 2, 12

*Little Sisters of the Poor Saints Peter & Paul Home v.
    Pennsylvania*,
    140 S. Ct. 2367 (2020) ..................................................................... 6

*Los Angeles County v. Davis*,
    440 U.S. 625 (1979) ................................................................... 7, 19

*Lujan v. Defenders of Wildlife*,
    504 U.S. 555 (1992) ......................................................................... 3

*Massachusetts v. EPA*,
    549 U.S. 497 (2007) ......................................................................... 2

*McPherson v. Michigan High School Athletic Association, Inc.*,
119 F.3d 453 (6th Cir. 1997) .......................................................... 15

*Michigan v. Long*,
463 U.S. 1032 (1983) ....................................................................... 4

*MOAC Mall Holdings LLC v. Transform Holdco LLC*,
143 S. Ct. 927 (2023) ......................................................... 11–13, 21

*Pennhurst State School and Hospital v. Halderman*,
451 U.S. 1 (1981) ........................................................................... 18

*Pottgen v. Missouri State High School Activities Association*,
40 F.3d 926 (8th Cir. 1994) ........................................................... 16

*Rosado v. Wyman*,
397 U.S. 397 (1970) ....................................................................... 18

*Soule by Stanescu v. Connecticut Association of Schools, Inc.*,
57 F.4th 43 (2d Cir. 2022) ............................................................. 11

*Spokeo, Inc. v. Robins*,
578 U.S. 330 (2016) ......................................................................... 7

*Steel Co. v. Citizens for a Better Environment*,
523 U.S. 83 (1998) ........................................................................... 9

*TransUnion LLC v. Ramirez*,
141 S. Ct. 2190 (2021) ................................................... 6–7, 11, 20

*United States v. Students Challenging Regulatory Agency
Procedures (SCRAP)*,
412 U.S. 669 (1973) ...................................................................... 1–2

*United States v. Virginia*,
518 U.S. 515 (1996) ....................................................................... 26

*Utah v. Evans*,
536 U.S. 452 (2002) ......................................................................... 2

*Uzuegbunam v. Preczewski*,
141 S. Ct. 792 (2021) .................................................................... 19

*Vermont Agency of Natural Resources v. United States ex rel. Stevens*,
  529 U.S. 765 (2000) .......................................................................... 2

*Warth v. Seldin*,
  422 U.S. 490 (1975) .................................................................... 2, 18

*West Virginia v. Environmental Protection Agency*,
  142 S. Ct. 2587 (2022) ................................................................ 4, 7

*Wiley v. National Collegiate Athletic Association*,
  612 F.2d 473 (10th Cir. 1979) ........................................................ 17

**Constitutional Provisions**

U.S. Const. art. VI, cl. 2 ........................................................................ 22

**Statutes**

20 U.S.C. § 1681(a) ......................................................................... 18, 26

Pub. L. No. 93-380, § 844, 88 Stat. 484 (1974) ...................................... 18

**Regulations**

34 C.F.R. § 106.41(b) ............................................................................ 26

34 C.F.R. § 106.41(c) ............................................................................ 26

**Treatises**

Restatement (Second) of Contracts § 346 (1981) ................................... 24

**Other Authorities**

118 Cong. Rec. 5,807 (statement of Sen. Bayh) ..................................... 26

CAIC 2022-2023 Handbook ............................................................ 21–22

*More Hurdles to Clear: Women and Girls in Competitive Athletics*,
  U.S. Commission on Civil Rights (July 1980) .................................. 18

Office of Civil Rights, U.S. Department of Education, *Revised Letter of Impending Enforcement Action* (Aug. 31, 2020).............25

**INTRODUCTION**

No one doubts Plaintiffs had standing when they filed this lawsuit. And no reason exists to reach a different conclusion now. Plaintiffs plausibly alleged a cornucopia of injures in fact caused by CIAC's policy. Over *three years* after this case was filed, courts still haven't addressed, let alone redressed, even one of their injuries—past, present, or future—despite the fact that the CIAC's own policies allow for record changes. That is wrong, and it conflicts with rulings by at least four other circuits. Courts routinely recognize student athletes' ongoing interest in vindicating the records they've earned. That principle doesn't change simply because litigation is high profile or the merits are disputed. Jurisdictional rules are the same no matter the parties' identities. This Court should reverse and remand for a merits ruling.

## I. Defendants get basic elements of the standing inquiry at the pleadings stage wrong.

### A. The standing bar is low.

Defendants try to make a mountain out of mole hill. *E.g.*, Defs.Br.20–21, 32–33. But, at the pleading stage, the standing bar is low. The injury-in-fact requirement ensures that plaintiffs are "'adversely affected' or 'aggrieved,'" separating those "with a direct stake in the outcome . . . from a person with a mere interest in the problem." *United States v. Students Challenging Regulatory Agency Procedures (SCRAP)*, 412 U.S. 669, 689 n.14 (1973). But it does not test

the *magnitude* of a plaintiff's injury. A "small" injury or "identifiable trifle is enough," *id.*, and the injury "need not be large," *LaFleur v. Whitman*, 300 F.3d 256, 270 (2d Cir. 2002) (quotation omitted). Nor must harmful consequences be certain. "Even a small probability of injury is sufficient to create a case or controversy" so long as "the relief sought would, if granted, reduce the probability" of harm. *Massachusetts v. EPA*, 549 U.S. 497, 525 n.23 (2007) (cleaned up). (Intervenors concede "Plaintiffs have alleged an injury in fact." Intervenors.Br.28.)

Redressability is much the same. Plaintiffs must show only "a *substantial likelihood* that the requested relief will remedy the alleged injury in fact." *Vt. Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 771 (2000) (emphasis added) (cleaned up). Allegations showing a court order will "significant[ly] increase . . . the likelihood" plaintiffs will obtain relief that "redresses the injury suffered" are enough. *Utah v. Evans*, 536 U.S. 452, 464 (2002). No certainty is required.

Boiled down, Article III requires a plaintiff to "allege facts demonstrating that [s]he is a proper party to invoke judicial resolution of the dispute and the exercise of the court's remedial powers." *Warth v. Seldin*, 422 U.S. 490, 518 (1975). Here, CIAC's policy forced Plaintiffs to compete against—and lose to—biologically male competitors, depriving them of their Title IX rights and diminishing their official athletic records and resumes. Plaintiffs are the ideal people to seek judicial resolution of the dispute regarding Title IX's requirements.

### B. Standing is determined when the complaint is filed; mootness is different.

Defendants and Intervenors focus on anything but the time when Plaintiffs filed the complaint. *E.g.*, Defs.Br.41–45; Intervenors.Br.18–19, 31. Nonetheless, an injury in fact and redressability are standing elements. *Friends of the Earth, Inc. v. Laidlaw Env't Servs. (TOC), Inc.*, 528 U.S. 167, 180–81 (2000). Standing is determined "at the outset of the litigation," *id.* at 180, "when the complaint is filed," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 569 n.4 (1992) (cleaned up). Plaintiffs bear the burden of showing standing. *Id.* at 561. Yet, at every stage of the case, "the standing inquiry remains focused on whether [Plaintiffs] had the requisite stake in the outcome when the suit was filed." *Davis v. FEC*, 554 U.S. 724, 734 (2008).

"[I]nitial standing to bring suit" differs from "post[-]commencement mootness." *Friends of the Earth*, 528 U.S. at 174; *accord id.* at 189–92. Subsequent events may render legal issues "no longer 'live'" or deprive the parties of "a legally cognizable interest in the outcome." *Chafin v. Chafin*, 568 U.S. 165, 172 (2013) (quotation omitted). But a case is "moot only when it is impossible for a court to grant any effectual relief whatever to the prevailing party." *Id.* (quotation omitted). When a party has "a concrete interest, however small, in the outcome" the case is live, *id.* (quotation omitted), as "a partial remedy" forestalls mootness, *Calderon v. Moore*, 518 U.S. 149, 150 (1996) (per curiam)

(quotation omitted). And the party suggesting mootness—here, Defendants—"bears the burden to establish that a once-live case has become moot." *West Virginia v. Env't Prot. Agency*, 142 S. Ct. 2587, 2607 (2022).

Most of Defendants' complaints are really about mootness, not standing. *E.g.*, Defs.Br.33–34; Intervenors.Br.31–32. So the burden is on them—not Plaintiffs—to establish the impossibility of a court granting effectual relief, even in part. *Michigan v. Long*, 463 U.S. 1032, 1042 n.8 (1983). Defendants have not carried that burden.

### C. To show standing, plaintiffs need plausible allegations, not detailed pleadings or proof.

Defendants and Intervenors fault Plaintiffs for not providing more elaborate allegations or proof. *E.g.*, Defs.Br.7, 30; Intervenors.Br.12–13. Neither is required. On a motion to dismiss, courts "draw from the pleadings all reasonable inferences in the plaintiff's favor" and "presume that general allegations embrace those specific facts that are necessary to support the claim." *John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 737 (2d Cir. 2017) (cleaned up). Plaintiffs bear "no evidentiary burden." *Id.* at 736 (quotation omitted). Their task is to allege "facts that affirmatively and plausibly suggest . . . standing to sue." *Id.* (quotation omitted).

When the complaint was filed, Plaintiffs' allegations demonstrated they had standing. Soule, Mitchell, Smith, and Nicoletti were in high

school and members of the girls' varsity track team. App.132–33. Under CIAC's policy, Plaintiffs were forced to compete against Miller and Yearwood—two biological males. App.150–62. And Plaintiffs nearly always lost to them. App.152–62, 168–70. This unfair competition caused Plaintiffs emotional and psychological distress, anxiety, and depression. App.163–64. It also deprived them of medals, high-level opportunities to compete, and recognition on the victory podium—all of which were important to scouts and harmed Plaintiffs' contemporary efforts to obtain college scholarships. App.148, 156–62, 170, 173–75.

Plaintiffs' official athletic records and rankings also suffered reduction and inaccuracy. App.148, 156–62, 171–72. A timely court ruling that Title IX precluded CIAC's policy, an award of nominal damages, and an injunction barring the CIAC and its members from enforcing the policy would have saved Plaintiffs from further injury and remedied most of their existing harms. App.175–77.

So Plaintiffs clearly had standing when the complaint was filed. No one seriously contests that fact. *E.g.*, App.267. It is not Plaintiffs' fault that the district court refused to act on their motion for preliminary injunction, waited for Miller and Yearwood to graduate, then retroactively held that Plaintiffs lacked "standing" based on post-filing events 14 months after the case began.

### D.   A single plaintiff with standing is enough.

Defendants claim that several Plaintiffs experienced no real harm. *E.g.*, Defs.Br.8–9, 40–42. That is wrong because CIAC's policy forced all named Plaintiffs to compete against biological males, causing them to lose high-level opportunities to compete and/or medals or other accolades. App.152–59. What's more, this critique is irrelevant. "At least one party must demonstrate Article III standing for each claim for relief." *Little Sisters of the Poor Saints Peter & Paul Home v. Pennsylvania*, 140 S. Ct. 2367, 2379 n.6 (2020). There is no need for *every* plaintiff to do so. And CAIC's policy deprived Plaintiff Mitchell of several gold medals. That's sufficient.

## II.   Plaintiffs plausibly alleged an injury in fact.

### A.   Intervenors admit that Plaintiffs plausibly alleged an injury in fact. Defendants' arguments to the contrary are meritless.

Intervenors admit that "Plaintiffs have plausibly alleged an injury in fact because each Plaintiff has identified at least one specific instance in which she allegedly raced against—and finished behind—a" biological male. Intervenors.Br.25, 28–29. Defendants deny it. First, they cite the difference between an "injury in law" and an "injury in fact." Defs.Br.17–18. But Plaintiffs are not alleging mere statutory noncompliance. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2206–07 (2021). Defendants' Title IX violation *personally* harmed Plaintiffs. And they have plausibly alleged "monetary" and "cognizable intangible harm[s]"

6

as a result. *Id.* at 2206; *accord* En.Banc.Br.30–31. Plaintiffs "seek[ ] to remedy . . . harm[s] to [themselves]." *TransUnion*, 141 S. Ct. at 2206.

Second, Defendants say that no student has standing when a Title IX violation inflicts widespread injury on girls. Defs.Br.19. But "where a harm is concrete, though widely shared, the [Supreme] Court has found 'injury in fact.'" *FEC v. Akins*, 524 U.S. 11, 24 (1998) (quotation omitted). What matters is that "each individual suffers a particularized harm." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 n.7 (2016). And Plaintiffs have plausibly alleged individualized injuries here. En.Banc.Br.32–35.

Third, Defendants "reveal[ ] the basic flaw in [their] argument," *West Virginia*, 142 S. Ct. at 2607, when they say that Plaintiffs' efforts to prospectively enjoin the CIAC policy's "application to future high school races were *mooted* by the[ir] graduation." Defs.Br.20 (emphasis added). "It is the doctrine of *mootness*, not standing, that addresses whether an intervening circumstance has deprived the plaintiff of a personal stake in the outcome of the lawsuit." *West Virginia*, 142 S. Ct. at 2607 (cleaned up). Plaintiffs' completed and ongoing injuries in fact— and their standing to sue—did not vanish on graduation. *Contra* Defs.Br.33. Nor is the case moot because "interim relief or events have[n't] completely and irrevocably eradicated the effects of the alleged [Title IX] violation." *L.A. Cnty. v. Davis*, 440 U.S. 625, 631 (1979); *Davis v. New York*, 316 F.3d 93, 99 (2d Cir. 2002); *accord* En.Banc.Br.35–38.

Fourth, Defendants malign Plaintiffs' long list of injuries in fact, En.Banc.Br.26–30, as "the same purported harm of not placing higher—including first—in the races in which they competed." Defs.Br.21 n.19. That's wrong, but no matter because Defendants essentially admit that Plaintiffs alleged an actual or imminent, concrete, and particularized injury in fact at the outset. And Plaintiffs' emotional and psychological distress still qualifies as an *injury in fact*, En.Banc.Br.28, even though the Supreme Court recently held that injury is not *redressable* through money damages, *Cummings v. Premier Rehab Keller*, 142 S. Ct. 1562, 1576 (2022); Defs.Br.21.

Fifth, Defendants argue that CIAC's policy "does not affect Plaintiffs' [athletic] records." Defs.Br.23. That claim is plainly wrong and denies the Complaint's allegations. App.150–62. Without CIAC's policy, Miller and Yearwood couldn't have participated in girls' track. And if Miller and Yearwood hadn't competed against Plaintiffs, the female athletes' records would have improved either by showing that they advanced to state-wide meets, set school records, or obtained higher-ranking medals. En.Banc.Br.13–14, 34. Defendants effectively concede that Mitchell "would have finished fi[r]st" in certain races "but for the presence of Miller and Yearwood" and, in another race, would have received a silver medal instead of no medal. Defs.Br.46 n.24.

This permanent harm to Plaintiffs' athletic records is a concrete injury in fact. En.Banc.Br.28–29. It's no answer to say that Plaintiffs

8

may attempt to deviate from what their official records say. Defs.Br.47. Employers would likely regard that strategy as resume inflation or dishonesty, magnifying the harm to their career prospects.

Nor is it reasonable to assume that employers would credit Plaintiffs' original race records over their corrected ones. *Id.* There's no indication that's been an issue for professional athletes, En.Banc.Br.51–53, and there's no reason to think it would be a problem for Plaintiffs either. "[S]tanding in this case does not disappear by imagining a contrarian employer with a different measure of success. . . . [S]tanding is created because of the predictable response of employers to the records." En Banc Amicus Br. of 40 Business Executives at 13. Here, Plaintiffs' employment interest in correcting their "record[s] is not guesswork, because the response by the employers is predictable." *Id.*

Sixth, Defendants say that the injury to Plaintiffs' official record of athletic achievement is merely a "'psychic'" injury. Defs.Br.57 (quotation omitted). Not so. *Supra* Part II.A. The Complaint plausibly alleges that Defendants' Title IX violation personally harmed Plaintiffs by downgrading their official athletic records. En.Banc.Br.28–30, 32–35. They seek the "remediation of [their] own injur[ies]," *i.e.*, corrected athletic records, not a psychic "interest in faithful execution of" Title IX. *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 106 (1998) (quotation omitted).

Last, it's no answer for Defendants to say that Plaintiffs weren't shut out of track championships altogether or somehow "harmed enough." Defs.Br.23, 29. As noted above, any injury in fact—even a small one—resulting from CIAC's policy gives Plaintiffs standing. *Supra* Part I.A. And there is nothing trivial about subjecting Plaintiffs to unfair competition, shutting them out of high-level races, degrading their medals and records, displacing them on the podium, causing Plaintiffs' emotional and psychological distress, and reducing their ability to impress scouts and obtain college scholarships.

## B. The CIAC policy's impact on Plaintiffs' competitiveness in the marketplace is simply one reason this case isn't moot.

Defendants protest that there's nothing in the Complaint about harm to Plaintiffs' career prospects. Defs.Br.30–31, 39–40; Intervenors.Br.31. But when the Complaint was filed, Plaintiffs were high school athletes pursuing college admissions and scholarships. Plaintiffs alleged that CIAC's policy damaged those current interests. And a timely judicial ruling in Plaintiffs' favor would have remedied those harms. Plaintiff had standing at the outset.

Now, the issue is mootness, and the question is whether a court can "grant any effectual relief whatever" if Plaintiffs prevail. *Campbell-Ewald Co. v. Gomez*, 577 U.S. 153, 161 (2016) (quotation omitted). The

answer is "yes" due to the CIAC policy's negative "downstream conse-
quences" for Plaintiffs' resumes and career prospects. *TransUnion*, 141
S. Ct. at 2214 (quotation omitted). Just like CIAC's policy injured Plain-
tiffs' ability to compete for college admissions and athletic scholarships
when the complaint was filed, App.130–31, 156, 159, 174, it harms
Plaintiffs' competitiveness in the job market today. The ongoing harm is
the same; the arena has simply shifted from higher education to the job
market. Both the district court and the panel properly considered
Plaintiffs' employment-related arguments. App.277–78; *Soule by
Stanescu v. Conn. Ass'n of Schs., Inc.*, 57 F.4th 43, 52–53 (2d Cir. 2022).

Defendants deride the CIAC policy's lasting harm to Plaintiffs'
resumes and career prospects. Defs.Br.30–31. But "a concrete interest,
however small, in the outcome of the litigation" prevents mootness.
*MOAC Mall Holdings LLC v. Transform Holdco LLC*, 143 S. Ct. 927,
934 (2023) (quotation omitted). Resisting Defendants' claim that no
actual controversy exists does not require Plaintiffs to present allega-
tions or evidence. *Contra* Defs.Br.30–31. They must explain only how "a
court can fashion *some* form of meaningful relief." *Church of Scientology
of Cal. v. United States*, 506 U.S. 9, 12 (1992). And a court order requir-
ing Defendants to correct Plaintiffs' athletic records is a "possible
remedy" to address the ongoing harm to Plaintiffs' athletic achieve-
ments and competitiveness in the marketplace. *Id.* at 13; *accord*
App.175–77.

11

Defendants say that the injury to Plaintiffs' resumes doesn't count because any employment benefit is speculative. Defs.Br.39–48. That Plaintiffs' list of athletic achievements would have improved but for CIAC's policy isn't "guesswork"—it's fact. Defs.Br.32, 45, 48 (quoting *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 413 (2013)). And more or better accolades would certainly benefit Plaintiffs' resumes and career prospects. Again, the improvement's *magnitude* is irrelevant. Just as an injury in fact "need not be large," *LaFleur*, 300 F.3d at 270, the uptick in Plaintiffs' resumes and career prospects, "however small," as a result of upgraded athletic records prevents mootness, *MOAC Mall Holdings*, 143 S. Ct. at 934 (quotation omitted).

This case is nothing like *Clapper*.[1] The plaintiffs there couldn't show "that they had been or were likely to be subjected to [the] policy" in question. *FEC v. Cruz*, 142 S. Ct. 1638, 1647 (2022). Here, Plaintiffs' ongoing "injuries are directly inflicted by [Defendant's] . . . enforcement of the [CIAC policy] they . . . challenge." *Id.* Enhancing Plaintiffs' official records of athletic success has a "predictable effect" on employers and customers alike—it bolsters Plaintiffs' resumes and

---

[1] Nor is this case anything like *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983). Defs.Br.16. There, the plaintiff lacked standing to seek injunctive relief because the defendant's unlawful acts had no "continuing, present adverse effects" on him, *Lyons*, 461 U.S. at 102 (quotation omitted), and there was no "real and immediate threat" that the plaintiff's injury would reoccur, *id.* at 105. Here, CIAC's policy has continuing adverse effects on Plaintiffs' athletic records and resumes.

attractiveness in the marketplace. *Dep't of Com. v. New York*, 139 S. Ct. 2551, 2566 (2019). It makes no difference how large the boost. *Any* increase gives Plaintiffs a "concrete interest . . . in the outcome of the litigation." *MOAC Mall Holdings*, 143 S. Ct. at 934 (quotation omitted).

Amici confirm that athletic honors matter to careers. Sports achievements offer cache in the marketplace because many people value "trophies, gold medals, and prestige." En Banc Amicus Br. of Tennessee & 22 Other States at 22 (quotation omitted). What's more "[r]ecords of athletic participation and accomplishment predict labor market success," including "the skills necessary to lead teams." En Banc Amicus Br. of 40 Business Executives at 1. Business leaders explain that "correct records of [Plaintiffs'] accomplishments will predictably open opportunities for higher level jobs," *id.* at 7, while "[d]epriving Plaintiffs of correct records of athletic achievement will predict[ab]ly harm them," *id.* at 9. So Plaintiffs have an ongoing injury that prevents mootness.

As female athletes emphasize, Plaintiffs' "record of athletic achievement" is something that will "accompan[y] them for life—opening doors, bridging cultural divides, and creating good will." En Banc Amicus Br. of Int'l Consortium on Female Sports at 3. Plaintiffs' have a concrete interest in maximizing their successes in sport because "athletic titles and placements achieved in one's youth can unlock opportunities throughout one's life." *Id.* at 36.

Female Olympic rowers' experience confirms this. They verify that "female athletes' professional development is directly related to their athletic achievements." En Banc Amicus Br. of Female Olympic Rowers at 3. "[P]olicies like CIAC's deprive female athletes [like Plaintiffs] of recognition, medals, records, and awards—all of which could be cited on a resume or used to attract a potential employer—and destroy the equality of opportunity Tile IX was meant to ensure." *Id.* at 20–21.

Defendants' narrow view of courts' jurisdiction makes it impossible for girls and women to remedy the inequalities that Congress enacted Title IX to fix. Litigation is slow and high school fleeting. If losing gold-medal listings on a resume doesn't preserve a female athletes' case, then recipients will be free to engage in the most egregious Title IX violations and get off scot-free. For example, Defendants could disband sex-based track teams entirely, create a single co-ed track team on which everyone had an opportunity to compete, and *only* biological males would receive gold medals as a result. Yet under Defendants' theory, the female athletes willing to sue could be kicked out of court.

## C. Other Courts of Appeals' rulings in student record cases confirm Plaintiffs' harm is ongoing, not moot.

Defendants contend that athletic-records decisions by other Courts of Appeals are inapposite because they considered mootness. Defs.Br.22, 24. But for a court to determine a case isn't moot and reach the merits, it must first conclude that a plaintiff "had Article III

standing at the outset of the litigation," *Friends of the Earth*, 528 U.S. at 180, including an "injury in fact," *id.* at 180–85. What's more, no one seriously argues that Plaintiffs lacked standing when this case was filed, so the real issue here is mootness too.

Take *McPherson v. Michigan High School Athletic Association, Inc.*, 119 F.3d 453, 455 (6th Cir. 1997) (en banc), which involved a student athlete who sued the state athletic association and later graduated from high school. "[N]o reasonable expectation of another controversy over [the student's] eligibility to play high school basketball" existed. *Id.* at 458. But the case wasn't moot, the Sixth Circuit said, because a ruling would still "make a difference to the legal interests of the parties." *Id.* (quotation omitted). The student would be injured by "forfeit[ing] to . . . opponents those team victories in which [he] participated," as well as by the association's efforts to "vacate or strike [his] records" or those of "his basketball team." *Id.* at 459.

The only variance here is that Plaintiffs seek to enhance their high school athletic records rather than preserve them. But that distinction makes no difference to Plaintiffs' ongoing injury and current interest in correcting their records. Either way, the lasting harm of maintaining *incorrect* records is the same.

Or consider *Crane v. Indiana High School Athletic Association*, 975 F.2d 1315, 1318 (7th Cir. 1992), where a student athlete sued the state athletic association for barring him from varsity golf for a year,

obtained an injunction enabling him to play golf that year, after which the injunction expired. The appeal wasn't moot, the Seventh Circuit said, because the student's "individual and team records, . . . victories won by the team," and "individual and team awards" were at stake. *Id.* Specifically, the athletic association—the party invoking appellate jurisdiction—sought "the return of these awards" and the forfeiture of a "sectional golf championship," and thus had "a very real, legal interest in the outcome of" the case. *Id.* at 1318–19.

*Crane* focused on the athletic association's ongoing harm or interest in the accuracy of its records. Defs.Br.25. But jurisdictional issues like standing or mootness don't turn on a party's identity or on which side of the "v." they find themselves. The Seventh Circuit held there was jurisdiction to consider the association's attempt to correct its athletic records. And that means this Court has jurisdiction over Plaintiffs' effort to correct their athletic records too.

The Eighth Circuit's ruling in *Pottgen v. Missouri State High School Activities Association*, 40 F.3d 926 (8th Cir. 1994), confirms this. There, the state athletic association barred a student from playing baseball his senior year, the student obtained a preliminary injunction, and later "played his last game." *Id.* at 928. "[A] live controversy still exists," the Eighth Circuit said, because "permanent [athletic] records and awards were" at stake. *Id.* So too here.

16

Equally telling is *Wiley v. National Collegiate Athletic Association*, 612 F.2d 473, 474–75 (10th Cir. 1979), where an athletic association deemed a college athlete ineligible, the student obtained an injunction to run track, and later graduated. On appeal, the Tenth Circuit ruled that "a substantial controversy still exists" because the association intended "to adjust [the student's] points and vacate any places earned in Big Eight championships" if it won. *Id.* at 475–76. "As long as [athletic] records and awards are at stake," the Tenth Circuit held, a "court can render a decision that will affect the rights of the litigants." *Id.* at 476.

CIAC policy's degrading of Plaintiffs' official athletic records was an injury in fact when this lawsuit was filed. And the same ongoing injury preserves Plaintiffs' stake in this case's outcome now.

Defendants' efforts to distinguish other circuits' educational-records decisions similarly fail. Defs.Br.26–27, 55–56. It makes no difference, for example, that "Plaintiffs did not perform poorly" in girls' track. Defs.Br.27. Pluses and minuses are both relevant to students' permanent education records. That is why professional resumes and biographies commonly feature "awards" sections that employers and consumers highly esteem. Both achievements and failings matter to students' marketability and career success. Specifically, sports records and trophies matter to students, schools, and athletic associations. And they matter to many employers and consumers. *Supra* Part II.B.

17

What's more, Defendants are wrong to treat students' athletic records as non-educational or trivial. Defs.Br.56. Title IX only applies to "education program[s] or activit[ies]." 20 U.S.C. § 1681(a). Congress specifically included athletic programs in that rubric. Pub. L. No. 93-380, § 844, 88 Stat. 484, 612 (1974); En.Banc.Br.5–6. And it did so for good reason: athletic opportunities are "an integral part of the educational process." *More Hurdles to Clear: Women and Girls in Competitive Athletics*, U.S. Comm'n on Civ. Rts. at iii (July 1980).

## III. Plaintiffs' have plausibly alleged their injuries are redressable.

### A. Nominal damages will likely redress Plaintiffs' completed harms.

Intervenors admit that Plaintiffs' injury in fact "is redressable through damages, including nominal damages." Intervenors.Br.30; *accord id.* at 26, 34. And Defendants concede that "nominal damages may be available in some Title IX cases," but contend they're "not available *in this particular case* by virtue of *Pennhurst State School and Hospital v. Halderman*, 451 U.S. 1, 17 (1981)." Defs.Br.37 (emphasis added). This argument confuses justiciability with the merits. "[S]tanding in no way depends on the merits of" Plaintiffs' claims, *Warth*, 422 U.S. at 500, including the "merits" issue of whether Plaintiffs "state a claim upon which relief can be granted," *Rosado v. Wyman*, 397 U.S. 397, 403 n.3 (1970).

18

The Supreme Court held that "a request for nominal damages satisfies the redressability element of standing where a plaintiff's claim is based on a completed violation of a legal right." *Uzuegbunam v. Preczewski*, 141 S. Ct. 792, 802 (2021). And that rule doesn't even consider—let alone depend on—whether the plaintiff *actually obtains* a nominal damages award. Rather, "a request for nominal damages," in and of itself, demonstrates "the necessary redress for a completed violation of a legal right." *Id.* at 802.

## B. Declaratory and injunctive relief will likely redress Plaintiffs' ongoing harms.

Plaintiffs request a declaratory judgment that CIAC's policy violates Title IX and an injunction ordering Defendants to correct their official athletic times, victories, qualifications, and record times—giving the female athletes the credit and titles they deserve. App.176. This relief would have redressed Plaintiffs' ongoing harm of downgraded official athletic records and less-stellar resumes when this case was filed, and it would redress the same lasting harm now. Where no "interim relief or events have completely and irrevocably eradicated the effects of the alleged [Title IX] violation," the case is live and redressability is not an issue. *Davis*, 440 U.S. at 631.

Defendants' and Intervenors' contrary arguments fall flat. First, they say that students' ability to seek prospective relief disappears when they graduate. Defs.Br.33; Intervenors.Br.26, 34. But what

matters is if plaintiffs allege "downstream consequences" of defendants' allegedly unlawful conduct that could potentially be—but haven't yet been—remedied. *TransUnion,* 141 S. Ct. at 2214 (quotation omitted). Here, Plaintiffs' official athletic records and resumes are *more* injured now than they were when the complaint was filed because Plaintiffs were forced to keep competing against biological males. And prospective relief upgrading their official records could redress those injuries.

Second, Defendants maintain that it's impossible to correct Plaintiffs' athletic records. Defs.Br.52–53. Yet they admit "the reallocation of medals sometimes occurs in high-level sports competitions, such as the Olympics." *Id.* at 51 n.26. Defendants' only rejoinder is that "[t]he Olympics is a private organization that is not governed by Title IX." *Id.* But that logic helps Plaintiffs: if organizations that *are not* subject to Title IX can correct and upgrade athletic records retroactively, then Defendants who *are* subject to Title IX certainly can. What's more, "[i]f Olympic athletes—performing on the world's highest stage—can be stripped of their medals, rightfully returning medals to high school students should be an eminently reasonable remedy." En Banc Amicus Br. of 21 Athletic Officials and Coaches of Female Athletes at 16–17.

Third, Defendants argue that "Plaintiffs have not shown that there is a proper legal framework for invalidating or altering [their athletic] records." Defs.Br.52 (quotation omitted). Yet Defendants cite no basis for that obligation at the pleadings stage. The Supreme Court

rejected a similar argument in the mootness context. When respondents raised an argument about "the legal availability of a certain kind of relief," the Court refused to consider it because petitioner's requested remedy wasn't "so implausible that it was insufficient to preserve jurisdiction." *MOAC Mall Holdings*, 143 S. Ct. at 935 (quotations omitted). Nor is Plaintiffs' requested prospective relief "so implausible" that redressability is lacking here.

Fourth, Defendants and Intervenors try to distinguish CIAC's own rules, Defs.Br.49–53; Intervenors.Br.33–34, which expressly authorize retroactive record changes in "the interest[s] of restitution and fairness." CAIC 2022-2023 Handbook at 53, https://perma.cc/9U2W-WBQW. The point remains: if athletic records can change because of CIAC rule violations, they can certainly change based on a violation of Title IX. En.Banc.Br.49. Defendants and Intervenors cite no persuasive reason otherwise. They merely claim CIAC's rules aren't a perfect fit. Either way, they're relevant and support redressability.

For instance, Defendants expunge the records of athletes who take steroids, CIAC 2022-2023 Handbook at 103, which are often synthetic modifications of testosterone, App.140. Biological males naturally produce radically more testosterone than biological females, giving them a competitive edge. App.140–41. And testosterone-suppressing drugs can't erase that advantage. App.146–47.

Defendants also subtract points and readjusts rankings when ineligible students compete. CIAC 2022-2023 Handbook at 97. Here, the essence of Plaintiffs' claims is that Title IX renders biological males ineligible to compete on girls' track teams. *E.g.*, App.130–32.

Finally, if a student competes under a court order and that order is later cancelled (*i.e.*, once competition is over), CIAC vacates or strikes individual or team records, reassigns victories, and revokes awards. CIAC 2022-2023 Handbook at 53. Plaintiffs ask for essentially the same remedies if a court rules that CIAC's policy violated Title IX.

Fifth, Defendants and Intervenors maintain that correcting Plaintiffs' athletic records would retroactively change the rules. Defs.Br.34, 51; Intervenors.Br.32–34. That gets things backwards and confuses jurisdiction with the merits. Under the Supremacy Clause, a federal statute like Title IX, trumps state regulations like CIAC's policy. U.S. Const. art. VI, cl. 2. Plaintiffs are not arguing for a *new* rule; their claim is that Title IX barred recipients from allowing biological males to compete on girls' track teams *all along*. There is nothing improper about Plaintiffs' effort to align their athletic records with Title IX's longstanding requirements.

## IV. *Pennhurst*'s notice requirement doesn't apply. Regardless, Defendants had sufficient notice.

Defendants say *Pennhurst*'s notice requirement bars Plaintiffs' nominal-damages claim because they were trying to comply with Title

IX—not violate it. Defs.Br.58, 65. But nearly every funding recipient could say that it intended to follow Title IX even if it ultimately failed. Nor can Defendants evade liability by arguing that Title IX's requirements weren't clear: "adequate notice" under *Davis* isn't a lesser form of qualified immunity.

"*Pennhurst* does not bar a private damages action under Title IX where the funding recipient engages in *intentional conduct* that violates the clear terms of the statute." *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 642 (1999) (emphasis added). So the question is whether recipients engaged in "*intentional actions*" that Congress "sought by statute to proscribe." *Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60, 75 (1992) (emphasis added).

A recipient's *conduct*, not the alleged Title IX *violation* itself, must be intentional. Official regulations like CIAC's policy here are "always—by definition—intentional." *Jackson v. Birmingham Bd. of Educ.*, 544 U.S. 167, 183 (2005). That deliberativeness is enough to prove intentionality; *Pennhurst* doesn't require Congress to "specifically identify and proscribe each condition" that violates Title IX. *Id.* at 183 (cleaned up); *accord* Intervenors.Br.36 n.19.

Because Plaintiffs alleged "intentional *conduct* that violates [Title IX's] clear terms," which have long barred sex discrimination—including unequal athletic benefits and not effectively accommodating girls' athletic abilities, *Pennhurst*'s notice requirement doesn't apply. *Barnes*

*v. Gorman*, 536 U.S. 181, 187 (2002) (emphasis added). Yet Defendants "have been on notice that they could be subjected to private suits for intentional sex discrimination under Title IX since 1979." *Jackson*, 544 U.S. at 182. So they've had notice for over 40 years.

Defendants cannot achieve a different result by ignoring *Franklin*, *Davis*, *Jackson*, and *Barnes*, and appealing to "*Pennhurst's* motivating principles." Defs.Br.72. Nor do other holdings support their proposed rule.[2] The decision in *Arlington Central School District Board of Education v. Murphy*, 548 U.S. 291, 300 (2006), merely holds that a different statute failed to give recipients notice they could be liable for a certain *remedy*—"costs of experts or consultants." And *Cummings* ruled that Title IX recipients have notice they "will be subject to the *usual* contract remedies in private suits." 142 S. Ct. at 1571. Yet where a breach of contract causes damage "but recovery for that loss is precluded" by a failure of proof or some other reason, the usual rule is that "the injured party will nevertheless get judgment for nominal damages." Restatement (Second) of Contracts § 346 (1981).

---

[2] The only case that arguably helps Defendants is *Horner v. Kentucky High School Athletic Association*, 206 F.3d 685, 693 (6th Cir. 2000). But the Sixth Circuit declined to adopt a particular standard for "'intent under Title IX when a facially neutral policy is challenged" because the plaintiffs there "fail[ed] to establish a violation of Title IX." And *Horner*'s dicta isn't persuasive because the Sixth Circuit weighed in before *Jackson* and *Barnes*. So it missed the Supreme Court's focus on intentional conduct, rather than intentional discrimination.

**V.    The merits of Plaintiffs' Title IX allegations aren't before the Court. Nevertheless, Plaintiffs have answers to Intervenors' improper merits claims.**

The en banc Court instructed the parties to brief only three issues: (1) injury in fact, (2) redressability, and (3) *Pennhurst* notice. None of those issues depend on the plausibility of Plaintiffs' Title IX claims. Defs.Br.17 n.18. Yet Intervenors spend most of their brief arguing the merits. Intervenors.Br.36–60. That is improper, as Intervenors essentially admit. Intervenors.Br.36. Courts must assume plaintiffs' success on the merits in determining jurisdiction. En.Banc.Br.2 n.1, 53 n.10. So the Court should decline to consider Intervenors' merits arguments, which Plaintiffs have not briefed.

Notably, the U.S. Department of Education concluded that Defendants violated Title IX by discriminating against female student-athletes. Off. of Civ. Rts., U.S. Dep't of Educ., *Revised Letter of Impending Enforcement Action* (Aug. 31, 2020), https://perma.cc/T3B2-S5X5. That enforcement letter has since been rescinded. But, if nothing else, it shows that Plaintiffs' Title IX allegations are plausible.

For present purposes, it suffices to say that Plaintiffs have answers to Intervenors' merits arguments and briefly describe a few, reserving full argument for remand. First, Intervenors claim that Title IX is agnostic on the definition of "sex." Intervenors.Br.38–40. But, in the 1970s, the ordinary meaning of "sex" was biological, "immutable," and determined by "birth." *E.g.*, *Frontiero v. Richardson*, 411 U.S. 677,

686 (1973). Title IX and its implementing regulations adopt that view, speaking in binary terms. *E.g.*, 20 U.S.C. § 1681(a)(2) (referring to "one sex" or "both sexes"); 20 U.S.C. § 1681(a)(6)(B) (addressing organizations for "Boy[s]" and "Girl[s]"); 34 C.F.R. § 106.41(b) (allowing "separate teams for members of each sex"); 34 C.F.R. § 106.41(c) (requiring recipients to "effectively accommodate the interests and abilities of member of both sexes").

Second, Intervenors cannot rely on instances where only one coed sports team exists to dispute the plausibility of Plaintiffs' Title IX claims. Intervenors.Br.45–47. This case concerns sex-based boys' and girls' track teams. All students may participate in one team or the other. *Contra* Intervenors.Br.51. The question is whether biological males may compete on the girls' track team without depriving biological females of equal athletic opportunities and effective accommodation of their abilities. Plaintiffs' argument that they cannot is certainly plausible, as "[p]hysical differences between men and women . . . are enduring," "the two sexes are not fungible," *United States v. Virginia*, 518 U.S. 515, 533 (1996) (cleaned up), and sex-based treatment is sometimes "absolutely necessary to the success of the [educational] program," 118 Cong. Rec. 5,807 (statement of Sen. Bayh).

Third, Intervenors recognize that Title IX requires "[s]ex-separated teams in non-contact sports such as track and field" if, for example, biological girls "do not possess sufficient skill to be selected for

a single integrated team or to compete actively on such a team if selected." Intervenors.Br.49 (quotation omitted). Yet Plaintiffs' allegations fall directly into this mold. App.139–47. Intervenors simply ask this Court to reject Plaintiffs' plausible allegations, which is disallowed on a motion to dismiss.

Last, Intervenors dispute Plaintiffs' Title IX claims based on aggregate-group-level effect. Intervenors.Br.53. But Plaintiffs plausibly alleged that CIAC's policy resulted in biological girls receiving one first place recognition out of 14 state championship events, while biological males captured 13. App.159. And Plaintiffs alleged that at certain state-level championship events, biological males received 68 opportunities to participate, whereas girls received only 40. App.159. This shows aggregate effect. App.163. It also demonstrates that Defendants' "treatment, benefits or opportunities are not equivalent in kind, quality, or availability, for members of both sexes." Intervenors.Br.58 (quotations omitted).

## CONCLUSION

This Court should hold that Plaintiffs had Article III standing when this case was filed, the case isn't moot, and *Pennhurst*'s notice requirement doesn't bar Plaintiffs' nominal-damages claim. And it should reverse and remand with instructions for the district court to issue a merits ruling promptly, without additional delay.

Respectfully submitted,

*/s/ John J. Bursch*

ROGER G. BROOKS
ALLIANCE DEFENDING FREEDOM
15100 N. 90th Street
Scottsdale, AZ 85260
(480) 444-0020
rbrooks@ADFlegal.org

CODY S. BARNETT
ALLIANCE DEFENDING FREEDOM
44180 Riverside Parkway
Lansdowne, VA 20176
(571) 707-4655
cbarnett@ADFlegal.org

JOHN J. BURSCH
CHRISTIANA M. KIEFER
ALLIANCE DEFENDING FREEDOM
440 First Street NW, Ste. 600
Washington, DC 20001
(202) 393-8690
jbursch@ADFlegal.org
ckiefer@ADFlegal.org

RORY T. GRAY
ALLIANCE DEFENDING FREEDOM
1000 Hurricane Shoals Rd. NE
Suite D-1100
Lawrenceville, GA 30043
(770) 339-0774
rgray@ADFlegal.org

*Counsel for Appellants*

May 4, 2023

## CERTIFICATE OF SERVICE

I hereby certify that on May 4, 2023, this brief was filed electronically with the Clerk of the Court for the United States Court of Appeals for the Second Circuit through the Court's CM/ECF system. I certify that all participants in the case who are registered CM/ECF users will be served by the appellate CM/ECF system.

*/s/ John J. Bursch*
John J. Bursch

## CERTIFICATE OF COMPLIANCE

This brief complies with the word limit of Circuit Rule 32(c) because, excluding the portions exempted by Fed. R. App. R. 32(f), this brief contains 6,201 words.

This brief also complies with the typeface requirements of Fed. R. App. P. 32 (a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

*/s/ John J. Bursch*
John J. Bursch
*Counsel for Appellants*

Dated: May 4, 2023