NATHAN, *Circuit Judge*, joined by ROBINSON, *Circuit Judge*, concurring:

Stepping back from some of the abstract legal concepts at issue in this appeal, it is important to say that this case is, at root, about kids who want to compete in high school track and field. At the time this lawsuit was brought, Plaintiffs were such kids. So were Intervenors Andraya Yearwood and Terry Miller. Andraya and Terry competed on the girls' track-and-field teams at their respective high schools when they were teenagers. Before that, in the summer before her eighth-grade year, Andraya came out to her parents as transgender and began receiving social and medical support for her transition. By the time she started at Cromwell High School, she was known to her family and peers as a girl, participating in all aspects of high school life consistent with her gender identity.

Terry recalls being aware of her female gender identity as early as the fifth grade, but she did not have the language or support to understand what it would take to live authentically. Terry finally began to live her life as a girl after coming out in the tenth grade. And just like Andraya, Terry was known and accepted as a girl by her family, friends, teammates, and coaches at Bloomfield High School.

Andraya and Terry presumably competed in high school track and field for the same reasons as Plaintiffs: "because they love to run; because being a part of a

1

team provided them a supportive community and created lasting social and emotional relationships; because training and competition allowed them to prove their athletic skills, challenge themselves, and release stress and anxiety; and because athletics gave them a place to be themselves and thrive." Intervenors' Br. at 1. Indeed, these benefits can have special importance for transgender students, "who are at heightened risk for feelings of isolation, discrimination, harassment, and low self-esteem." Am. Br. of the Nat'l Women's L. Ctr. & 34 Additional Civ. Rts. & Other Orgs., at 4.

In this case, Plaintiffs claim that it was unfair for them to have to compete against girls who are transgender and they challenge the validity of the Connecticut policy that allowed Andraya and Terry to play on their respective school's girls sports teams, consistent with their gender identity. Although that policy's legality is in dispute, I want to be perfectly clear that, as the entire Court has recognized, *see* Maj. Op. at 34; Diss. Op. at 23, "Andraya and Terry followed all the rules of competition, on and off the field"; put simply, they themselves "have done nothing wrong." Intervenors' Br. at 1.

This brings me back to the standing issue our Court resolves today—namely, whether Plaintiffs have standing to challenge the Connecticut policy and

seek monetary and injunctive relief. The interest that transgender students like Andraya and Terry have in participating in high school athletics compels me to consider how I would resolve this standing question if the shoe were in fact on the other foot. *See* Maj. Op. at 28-29. Imagine a cross-country race in which all athletes run together, but girls' and boys' times and placements are reported separately. Presume the school district refuses to list the times and placements of transgender girls as girls, listing them instead as boys. As a result of that policy, a girl who is transgender is deprived of the higher placement and title she would have received had she been listed as a girl. Now imagine that transgender girl brings suit alleging that the school district had violated Title IX by refusing to list her placement and times based on her established gender identity. She seeks money damages, but she also seeks an injunction to correct those records in order to accurately reflect her athletic achievement.

In my view, if you would conclude that this hypothetical plaintiff would have standing to seek such injunctive relief, then you should conclude the same as to Plaintiffs in this case. The majority's holding that the public recognition of students' athletic achievements, as reflected in the records documenting those achievements, is a cognizable interest in the eyes of the law ensures that federal

3

courts are accessible not only to Plaintiffs in this case, but litigants like Terry and Andraya in some future case. For this reason, it is not surprising that Terry's and Andraya's own lawyers suggested at oral argument that we could conclude, as the majority has, that Plaintiffs do have standing. *See* Transcript at 63-64, 66, 68, 69, 71-72.

Of course, standing conclusions only get litigants in the courthouse door. On remand, the district court will determine if Plaintiffs have stated a claim for a violation of Title IX. If they have, the district court will assess whether Plaintiffs are entitled to any remedies. These are highly contested questions. The merits issue includes consideration of the meaning of the word "sex" as contained in Title IX, implementing regulations, and policy interpretations. It will also include consideration under those authorities of what constitutes denial of equal athletic opportunity. Moreover, should the district court reach the question of injunctive relief, it will have to consider how to balance principles of fairness and equality. It bears emphasis that, as the majority explains, the Court's decision today expresses no views on these contentious issues. *See* Maj. Op. at 44-45.

Because the issue the Court resolves is standing, I have done my level best to put any preliminary merits views aside. Noteworthy though is that the merits

question in this case is not whether Title IX requires schools to allow transgender girls like Andraya and Terry to compete on girls' sports teams.[1] Rather, the question is whether Title IX actively *prohibits* schools from doing so. Put otherwise, to prevail on the merits, Plaintiffs must show that Title IX requires schools to exclude transgender girls from competing on girls' sports teams consistent with their established gender identity. This is an interpretation of Title IX that no court has ever adopted—a fact that remains true after our decision today. Nothing in the Court's decision adopts Plaintiffs' construction of Title IX.

---

[1] One of our sister circuits has held that a categorical ban on the participation of transgender women and girls in women's student athletics likely violates the Equal Protection Clause. *See Hecox v. Little*, 79 F.4th 1009, 1016 (9th Cir. 2023) (affirming the district court's grant of preliminary injunctive relief because the law "categorically bans transgender girls and women at all levels from competing on female, women, or girls teams" and the state "failed to adduce any evidence demonstrating that the Act is substantially related to its asserted interests in sex equality and opportunity for women athletes" (cleaned up)). A similar law enacted in West Virginia is currently enjoined pending review by the Fourth Circuit. *See B.P.J. v. W. Virginia State Bd. of Educ.*, 2023 WL 2803113, at *1 (4th Cir. Feb. 22, 2023) (granting a motion for injunction pending appeal after the district court determined that West Virginia's law is neither unconstitutional nor violates Title IX).